BEVERAGE SALES, INC., APPELLANT, *v.* BURGER BREWING CO., APPELLEE.[*]

---

[*]Motion to certify the record overruled, October 14, 1959.

(No. 8519—Decided February 24, 1959.)

*Messrs. Gorman, Davis & Hengelbrok* and *Messrs. Maddox & Hire,* for appellant.

*Mr. Paul R. Riesenberg* and *Messrs. Dolle, O'Donnell, Cash, Fee & Hahn,* for appellee.

*Per Curiam.* In 1943 three men formed a partnership to engage in the sale and distribution of beer and other brewery products under the name of Burger Beer Distributors. Through several mutations, that partnership has become the plaintiff corporation, and has succeeded to all the rights of the partnership in its dealings, in its various forms, with the defendant.

Almost at once the defendant appointed the partnership as its exclusive distributor of beer and its other products in what was known as the Springfield area, and this arrangement continued, without interruption, to November 1, 1956.

To popularize its product and thereby increase its sales, the defendant instituted an advertising program by radio and television, coupled with the broadcasting of baseball games and other sporting events, but chiefly baseball games in which the Redlegs were participating. The cost of this advertising was apportioned among the defendant, the brewer or manufacturer of the beer, and the plaintiff and other distributors. According to the allegations of the amended petition, the plaintiff paid to defendant or Midland Advertising Agency under this arrangement the sum of $48,589.79, and defendant admits such payments were made. This action is to recover the amount so paid. By its answer, the defendant admitted these allegations. The Common Pleas Court sustained a motion for judgment on the pleadings as to the first cause of action stated in the petition, and entered judgment for the defendant thereon. That is the first error assigned on this appeal.

It is urged that such an arrangement for co-operation in advertising between a manufacturer of beer and a wholesale distributor is contrary to the provisions of Section 4301.24, Revised Code, which are as follows:

"No manufacturer shall aid or assist the holder of any permit for sale at wholesale and no manufacturer or wholesale distributor shall aid or assist the holder of any permit for sale at retail by gift or loan of any money or property of any description or other valuable thing, or by giving premiums or rebates. * * *"

While we are inclined to agree with appellant's counsel that this section needs no interpretation, we cannot agree with him as to its meaning as applied to the allegations of the first cause of action.

When the plaintiff paid defendant $48,589.79, it certainly seems to us the benefit was bestowed upon, and not by, the defendant. Of course, advertising the defendant's beer, no matter who paid for it, would be beneficial to all parties interested in its sale, but that would become a part of the reputation of the beer just as the standing of the defendant as a brewer of high quality beer would be a part of the beer itself delivered to the plaintiff.

Of course both parties hoped for profits, and the record shows that they were not disappointed. The plaintiff profited greatly. The defendant by the act of appointing the plaintiff exclusive distributor conferred a great benefit, and by supplying beer at a price that would enable it to be sold at a profit assisted the plaintiff, but all the statutes on this subject are predicated upon the hypothesis that such an arrangement between a brewer and distributor for the sale of beer could be made, and that the making of such an arrangement was for their mutual benefit and profit.

We find that the parties violated no statute in co-operating in paying the expense of advertising.

If it could be said that the statute was violated, then both parties were equally guilty—were *in pari delicto*—and, therefore, no cause of action in favor of either would arise, and the court did not err in dismissing the first cause of action.

The case went to trial before a jury upon the issues raised by the allegations of the amended petition as to its second cause of action and the answer thereto.

In its original petition, the plaintiff alleged as its second cause of action that in March 1943 the defendant represented

to the plaintiff's predecessor that, if they would become wholesale distributors of its products in the Springfield area, it would supply such products indefinitely and would aid and assist in all possible ways and "represented further that no loss would be sustained." In its petition, the plaintiff alleged that it relied on these representations, became wholesale distributor, made purchases of specialized equipment, and built up a large and lucrative business in the area.

The plaintiff alleged also that the defendant on October 15, 1956, notified it that it would, on November 1, 1956, terminate the relationship, and that it did on said date terminate the wholesale distributorship without its consent and contrary to its wish, and that as a result its specialized equipment, buildings, and other property were rendered less valuable, all to its damage in the sum of $39,370.67, for which it prayed judgment.

During the trial the plaintiff filed an amended petition by leave of court. The filing of this amended petition was deemed necessary or expedient because of the testimony of certain witnesses as to conversations between officers of plaintiff and the the defendant's president in 1955.

It appears that one Titus, during all these years, had been the plaintiff's principal stockholder, and also a salesman in another area for defendant. The defendant had become dissatisfied with this dual arrangement and called in plaintiff's officers, including Titus, to discuss the matter. Titus testified at the trial that the defendant's president, who had been and was a long-time friend, said to him:

"When you are relieved of your duties as a salesman you can keep your distributorship until you are ready to retire, and then I will get a good buyer and see that he pays full value for your stock."

Interpreting that statement as a promise made by defendant to the plaintiff, the plaintiff incorporated it in its amended petition.

The plaintiff at no time claimed that the parties ever fixed a definite term for the duration of their distributorship. It was an agency at will. As we understand it, the claim of counsel is that by reason of this conversation between defendant's president and Titus, the defendant became estopped to terminate the

plaintiff's distributorship at will, and became bound to give reasonable notice before terminating it—and that defendant did not do.

While there is no doubt that a change of position in reliance upon a promissory representation may supply the consideration for the promise, the principle is inapplicable to the evidence in this record for the following reasons:

1. There is no evidence that the plaintiff changed its position in reliance on the representation.

2. There is no evidence whatsoever that the parties—plaintiff and defendant—had any intention of binding themselves, and the evidence indicates the contrary.

3. The natural meaning of the conversation between Titus and defendant's president is that it referred to Titus personally, and not to him as an officer of plaintiff corporation.

In deciding this case, Judge Hoy wrote an opinion which we have read and approve.

For these reasons the judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., LONG and O'CONNELL, JJ., concur.